IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MAGGIE EVELYN HOWSE )
)
v. )           No. 3:17-1349
)
SOCIAL SECURITY )
ADMINISTRATION )


To:     The Honorable Aleta A. Trauger, District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

Pending before the Court is Plaintiff's motion for judgment on the administrative record.

*See* Docket Entry ("DE") 15. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration

("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that

Plaintiff was "not disabled," and therefore not entitled to Supplement Security Income ("SSI").

(*See* Administrative Record, DE 10, at 7-9).[1] This matter has been referred to the undersigned,

pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See*

DE 3.

Upon review of the administrative record and consideration of the parties' filings, I

recommend that Plaintiff's motion for judgment on the administrative record (DE 15) be

**GRANTED**, the decision of the Commissioner be **REVERSED**, and this matter be

**REMANDED** for further administrative proceedings consistent with this Report and

Recommendation.

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

# I. FACTS AND PROCEDURAL HISTORY

Plaintiff initially filed an application for SSI on April 1, 2014 due to arthritis, gout, and neuropathy, with an alleged disability onset date of March 1, 2014. (Tr. 84, 101, 124). Her application was denied initially and on reconsideration. (Tr. 101, 115). Plaintiff then appeared with counsel and testified at a hearing on July 11, 2016 before ALJ Angele Pietrangelo, who ultimately denied the claim on November 10, 2016. (Tr. 7-9). On August 4, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision. (Tr. 1-3). Therefore, the ALJ's decision stands as the final determination of the Commissioner.

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since April 1, 2014, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: plantar calcaneal spur, degenerative disc disease, diabetes mellitus with peripheral neuropathy, osteoarthritis, and somatic symptom disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she would be limited to simple, routine tasks and making only simple, work-related decisions and could tolerate only gradual, infrequent workplace changes in jobs where instructions are given verbally and do not requir[e] reading.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on February 7, 1965 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 1, 2014, the date the application was filed (20 CFR 416.920(g)).

(Tr. 12-18).

On appeal, Plaintiff submits that the ALJ (1) failed to consider all relevant medical evidence relating to Plaintiff's mental impairments, (2) failed to properly evaluate medical opinions relating to Plaintiff's physical condition, and (3) improperly relied on the vocational expert's testimony that Plaintiff can perform jobs in the national economy. DE 16 at 19-32.[2] Plaintiff therefore requests that she be awarded benefits or, alternatively, that this case be remanded for further administrative proceedings. *Id*. at 33.

## II. ANALYSIS

### A. Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed.

---

[2] Plaintiff's brief includes seven assertions of error, several of which allege similar flaws in the ALJ's analysis. Such assertions of error are therefore combined for purposes of this Report and Recommendation.

126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. § 416.920(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 416.920(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's RFC and determines whether the claimant can still perform past relevant work; and at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. §§ 416.920(a)(4)(i)-(v).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. § 416.920(a). "Past relevant work" is defined as work that claimants have

done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 416.960(b); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

**B. The Commissioner's Decision**

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform light

work with express limitations to account for her severe impairments, and that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform despite such limitations. (Tr. 12-18).

## C. Assertions of Error

### 1. The ALJ's consideration of medical evidence relating to mental impairments.

Plaintiff claims that the ALJ failed to properly evaluate all of the medical evidence in the record relating to her anxiety disorder and other cognitive impairments. DE 16 at 19, 22. Plaintiff specifically argues that the ALJ ignored relevant findings from examining psychologists E-Ling Cheah and Scott Gale, family practitioner David Carrier, treating social worker Sean Reilly, and other providers from Neighborhood Health.[3]

Dr. Cheah performed a consultative psychological examination of Plaintiff on June 12, 2014. (Tr. 356). After noting that Plaintiff was a "poor historian," Dr. Cheah diagnosed her with somatic symptom disorder, cocaine use disorder in sustained remission, problems related to employment, unspecified housing or economic problems, and other problems related to psychosocial circumstances. (Tr. 359-60). Dr. Cheah concluded that Plaintiff's level of functioning could not be "accurately determined" in light of her tendency to exaggerate symptoms, but nonetheless stated that Plaintiff showed "no evidence of impairment in social relating" and was able to follow both written and spoken instructions. (Tr. 359). The ALJ gave Dr. Cheah's opinion "great weight" based on its consistency with the examination findings. (Tr. 15).

---

[3] It is unclear why the ALJ identifies Dr. Cheah as a doctor but refers to Dr. Gale as "Mr. Gale" in the administrative opinion given that both providers are licensed psychologists. (Tr. 15-16).

Dr. Gale examined Plaintiff on July 29, 2015 at the request of her attorney. (Tr. 571-74). Dr. Gale noted that most of Plaintiff's history was derived from her granddaughter, who was required to sit with Plaintiff during the course of the examination due to Plaintiff's severe anxiety. (Tr. 572-73). Dr. Gale completed an accompanying report in which he diagnosed Plaintiff with mild to moderate intellectual disability and generalized anxiety disorder, and further opined that she suffers from "marked" limitations in 14 different areas of cognitive functioning, including her ability to understand very short and simple instructions, maintain attention for two-hour periods, maintain regular attendance at a job, get along with peers, and respond appropriately to changes in a work setting. (Tr. 575-76).[4] Dr. Gale also suggested that Plaintiff would "require the near constant support of her grandchildren or other family members." (Tr. 576). The ALJ accorded "little weight" to this opinion based on its alleged inconsistency with the medical evidence. (Tr. 16).

Plaintiff was treated at Neighborhood Health between 2015 and 2016 for a variety of primarily physical conditions, including hypertension, gastrointestinal pain, and a plantar calcaneal spur, as well as pain in her left hip, knee, and ankle following a motor vehicle accident in September of 2015. (Tr. 577, 583, 589, 681). Plaintiff was additionally seen for mental health counseling and psychotherapy on several occasions in 2016. (Tr. 645, 649, 653, 657, 663). Providers at Neighborhood Health identified Plaintiff's mental issues as major depressive disorder (Tr. 578, 651, 661, 664, 675, 685-86, 694), anxiety (657, 660-61, 675), and memory problems. (Tr. 657, 675). Plaintiff was described as having a "cognitive impairment" (Tr. 660)

---

[4] A "marked" limitation is defined as "more than moderate, but less than extreme. An individual need not be totally precluded from performing an activity to have a marked limitation as long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." (Tr. 576).

and "obvious mental incapability" (Tr. 670), and consistently received global assessment of functioning ("GAF") scores between 50 and 55. (Tr. 651, 664-65, 679).[5]

Mr. Reilly and Dr. Carrier, who saw Plaintiff as part of her treatment at Neighborhood Health, completed a medical source statement ("MSS") on July 7, 2016. (Tr. 765-67). The MSS opined that Plaintiff suffers from numerous "marked" limitations in mental functioning, including her ability to understand and remember very short and simple instructions, maintain regular attendance at work, sustain an ordinary routine without special supervision, get along with others, and respond appropriately to changes in a workplace setting. (Tr. 765-66).[6] The MSS also claims that Plaintiff is markedly restricted in her activities of daily living and that she suffers from "extreme" limitations in several other areas of mental functioning, including her ability to maintain attention for two-hour segments, complete a normal workday without interruptions, and initiate social contacts and communicate clearly with others. (Tr. 765-66).[7] Mr. Reilly and Dr. Carrier additionally opined that Plaintiff is extremely limited in her ability to function without repeated episodes of decompensation of extended duration. (Tr. 765-66).

---

[5] A GAF score is a "clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503, n.7 (6th Cir. 2006). A score between 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)," while a score between 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000).

[6] A "marked" limitation in this document refers to a "serious limitation .... The ability to function is severely limited, but not precluded." (Tr. 765).

[7] An "extreme" limitation is defined as a "major limitation .... There is no useful ability to function in this area." (Tr. 765). "Repeated episodes of decompensation, each of extended duration" are defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." (Tr. 766).

Dr. Carrier also completed a separate functional capacity assessment pertaining to physical impairments which nonetheless included the following notations related to her mental condition: "struggles to sit still due to cognitive/psychiatric issues" and "while I feel the majority of her inability to work is due to her cognitive and psychiatric impairments, her physical limitations pose additional barriers." (Tr. 773-78). The ALJ gave these opinions "little weight" based on their alleged inconsistency with records documenting Plaintiff's mental health treatment and her own reports to the examiners. (Tr. 16).

As an initial matter, the Sixth Circuit has held that an ALJ is not required to describe in her opinion all of the evidence contained in the administrative record. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("[A]n ALJ's failure to cite specific evidence does not indicate that it was not considered.") (internal citation omitted). This is because "[t]here is a difference between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 9, 2014) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002)). The ALJ instead "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado*, 30 F. App'x at 548 (internal citation omitted).

Plaintiff argues that the ALJ "cherry-pick[ed]" the medical evidence in concluding that anxiety and other cognitive impairments do not cause significant functional limitations (DE 16 at 24) and cites a cluster of evidence indicating that Plaintiff displayed anxious behavior, poor memory, and depression during various examinations. (Tr. 657, 660-61, 671-72). She also stresses that both Dr. Gale and Dr. Bruce Davis, the latter of whom performed an

"all systems consultative exam" on May 22, 2014 (Tr. 344), noted that Plaintiff suffers from anxiety, depression, poor memory, and an intellectual disability. (Tr. 344, 346, 574-76). Plaintiff's cherry-picking argument is the proverbial double-edged sword, however, as the bulk of the record reveals no significant struggles with anxiety or other cognitive limitations since the alleged onset date of March 1, 2014. The first mention of anxiety by a treating provider is found in a nurse practitioner's note from November 20, 2015 (Tr. 675-76), while the only other two references are contained in notes from December 14, 2015 and January 5, 2016 that were scheduled, respectively, to "discuss [her] disability evaluation" and complete "disability paperwork" in connection with the instant claim. (Tr. 657-62, 670-72).

In contrast, most of the record shows a dearth of cognitive or psychiatric abnormalities between 2014 and 2015. (Tr. 308, 371, 416, 498, 500, 504-05, 613, 620-21, 627, 635, 666-68, 683, 688, 722-23, 737). The ALJ cited specific records from November of 2015 in which Dr. Cesar Cardona notes that Plaintiff's normal psychiatric status included intact recent and remote memory, normal judgment and insight, and normal mood and affect. (Tr. 15, 613). The Court sees no error in this reasoned analysis. *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Plaintiff relies heavily on the report completed by Dr. Gale on July 29, 2015, which contains numerous severe cognitive limitations. However, the ALJ reasonably discounted Dr. Gale's assessment based on its inconsistency with medical evidence in the record, including the vast disparity between Dr. Gale's conclusions and the mild findings derived from Dr. Cheah's evaluation just one year earlier. (Tr. 16). The Court also notes that Plaintiff demonstrated no psychiatric abnormalities during treatment just three months prior to and one month after Dr.

Gale's examination. (Tr. 416, 737). Plaintiff continued to show "no anxiety, no depression" less than two months after this encounter. (Tr. 722). The undersigned thus finds that substantial evidence supports the ALJ's decision to reject Dr. Gale's conclusions regarding the severity of Plaintiff's mental condition. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010) ("Because the record adequately supports the finding that Dr. Watson's medical opinion was ... inconsistent with the record as a whole, the ALJ was warranted in discrediting her opinion.").

Plaintiff also claims that the ALJ improperly determined that she does not suffer from a severe mental impairment based on her achievement of a high school diploma and a driver's license. DE 16 at 23-24. Plaintiff relies on the Sixth Circuit's decision in *Gayheart v. Comm'r of Soc. Sec.*, in which the Sixth Circuit held that an ALJ's "focus on isolated pieces of the record [was] an insufficient basis" for according little weight to the opinion of a treating physician. 710 F.3d 365, 378 (6th Cir. 2013). *Gayheart* is inapposite, however, as there is no treating physician in the current case to trigger a violation of 20 C.F.R. 416.927.[8] Moreover, the ALJ did not base her finding solely on high school standing and the ability to legally drive, but also cited mild examination findings from multiple providers. (Tr. 15). The ALJ thus committed no error by relying on such information to support her determination that Plaintiff's mental impairments were not as severe as alleged. *Cf. Daniels v. Comm'r of Soc. Sec.,* 70 F. App'x 868, 873 (6th Cir. 2003) (finding no deficits of adaptive functioning based in part on claimant's graduation from high school); *Boyer v. Comm'r of Soc. Sec.*, No. 1:12-cv-3088, 2013 WL 6568768, at *14 (N.D. Ohio Dec. 13, 2013) (affirming ALJ's decision to discount treating physician's opinion that

---

[8] 20 C.F.R. § 416.927(c)(2) contains what is known as the "treating physician rule," which is discussed in more detail below. This regulation has since been rescinded, *see* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017), but was in effect at the time of Plaintiff's application.

claimant suffered from disabling mental impairments based in part on claimant's graduation from high school and attainment of driver's license); *Fox v. Colvin*, No. CIV.A. 14-267-DLB, 2015 WL 4425920, at *6 (E.D. Ky. July 18, 2015) (noting that completion of high school and attainment of driver's license were "appropriate factors" for the ALJ to consider in assessing claimant's intellectual functioning).

Plaintiff further alleges that the ALJ violated the treating physician rule, which requires the ALJ to give controlling weight to the opinion of a treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2). Even if the treating physician's opinion is not accorded controlling weight, the ALJ must provide "good reasons" for the weight that is given to the treating physician's opinion based on several factors that include the length of the treatment relationship, the nature of the treatment provided by the physician, and the supportability of the opinion. *See id.* § 416.927(c)(2)-(6).

Plaintiff's reliance on the treating physician rule with respect to her alleged mental impairments is misplaced. Dr. Carrier is not a mental health specialist, but a family practitioner (Tr. 778), which itself renders his status as a treating physician "questionable." *Correll v. Astrue*, No. 3:08-cv-280, 2009 WL 2601917, at *10 (E.D. Tenn. Aug. 24, 2009). *See also Mills v. Astrue,* 226 F. App'x. 926, 931 (11th Cir. 2007) (physician who treated claimant's back problems but did not specialize in mental health was a non-treating, non-specialist doctor for purposes of weight allocation). Dr. Carrier also saw Plaintiff on just one occasion, January 5, 2016, during which he commented that he was seeing Plaintiff specifically "to discuss disability evaluation," which suggests that he lacks the type of ongoing relationship sufficient to establish "treating physician" status. *See McKiernan v. Comm'r of Soc. Sec.*, No. 2:09-cv-0476, 2010 WL

1610754, at *4 (S.D. Ohio Apr. 12, 2010), *report and recommendation adopted*, 2010 WL 1817271 (S.D. Ohio May 4, 2010) (finding that a physician who "examined plaintiff only once for disability purposes" was not a treating physician). *See also Carpenter v. Berryhill*, No. 1:16-cv-3059, 2017 WL 6806258, at *7 (N.D. Ohio Dec. 13, 2017), *report and recommendation adopted sub nom.*, 2018 WL 295555 (N.D. Ohio Jan. 4, 2018) ("One documented visit to [a physician] since the original alleged onset date ... does not establish the kind of longitudinal relationship that underpins the deference accorded to treating physician's opinions.").

The Court also notes that following this single examination of Plaintiff, Dr. Carrier stated that there would need to be "neuropsychiatric testing to better comment on cognitive function in the context of her pursuit of disability." (Tr. 661). However, the extremely restrictive MSS completed by Mr. Reilly and Dr. Carrier provides no reference to any such testing or any other findings that support their conclusions despite specific prompts for such information, (Tr. 765), which tends to weigh against the ultimate findings. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Moreover, as noted previously, the ALJ appropriately cited specific evidence in the record that undermines the severe limitations proffered in Dr. Carrier's MSS, thereby providing "good reasons" for discounting the opinion even if Dr. Carrier were considered a treating physician. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) ("The conflicting objective evidence and the absence of any elaboration regarding [the claimant's] purported limitations properly constitute "good reasons" for rejecting the [treating physician's] MSS."). This assertion of error is therefore rejected.

**2. The ALJ's consideration of medical evidence relating to physical impairments.**

Plaintiff similarly argues that the ALJ failed to appropriately evaluate the evidence regarding her physical conditions. Plaintiff again contends that the ALJ violated the treating physician rule with respect to the opinion of Dr. Carrier and additionally asserts that the ALJ improperly neglected certain physical restrictions recommended by Dr. Davis. DE 16 at 28-30.

Dr. Carrier completed a physical functional capacity assessment ("FCA") on July 14, 2016 in which he opined that Plaintiff is unable to lift or carry more than five pounds for one hour per day and unable to reach, handle, finger, feel, stoop, kneel, or crouch for more than 30 minutes per day. (Tr. 775-78). He additionally found that Plaintiff can sit for just four hours per day, stand and walk for just one hour per day, and that she is completely unable to push or pull any amount of weight. (Tr. 774-776). Dr. Davis's opinion was less restrictive, but nonetheless included recommendations that Plaintiff be limited to sitting for four to six hours per day, one to two hours at one time, and standing/walking for three to four hours per day, just 15 to 20 minutes at one time. (Tr. 346).

The Court reiterates its skepticism as to Dr. Carrier's status as a treating physician for purposes of 20 C.F.R. § 416.927(c)(2). Again, Dr. Carrier's notation that Plaintiff was seen to discuss her disability claim suggests that his services were retained solely to obtain a favorable opinion, which undermines Plaintiff's position. *See Chaney v. Astrue*, No. 1:08-0021, 2009 WL 2567894, at *9 (M.D. Tenn. Aug. 19, 2009) (holding that a provider who "examined [the claimant] two times in the relevant five-year period ... and seems to have been hired for the purposes of litigation" was not a treating physician).[9] Even discounting the motivation behind

---

[9] Notes from Neighborhood Health further indicate that Plaintiff "was referred to Dr. Carrier ... to determine if she qualifies for disability by her lawyer." (Tr. 672). Curiously, Defendant does not challenge Dr. Carrier's status as a treating physician in its responsive brief.

Plaintiff's relationship with Dr. Carrier, the Sixth Circuit has held that a "single visit does not constitute an ongoing treatment relationship" for purposes of the treating physician rule. *Kornecky*, 167 F. App'x at 506. *See also Pethers v. Comm'r of Soc. Sec.*, 580 F. Supp. 2d 572, 579, n.16 (W.D. Mich. 2008) ("In our Circuit, as a matter of law, more than one examination is required to attain treating-physician status.").

Nevertheless, the Court agrees that the ALJ failed to properly consider and explain the weight given to the medical opinions in the record relating to Plaintiff's physical condition. The ALJ ultimately determined that Plaintiff's physical impairment would allow her to perform "light work," which is defined in the following way:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). Social Security Ruling ("SSR") 83-10 further defines light work as "requir[ing] standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251, at *6 (January 1, 1983).[10] As noted by Plaintiff, only two examining physicians opined as to the extent of her exertional capability, Drs. Carrier and Davis, neither of whom concluded that Plaintiff would be able to satisfy these criteria. The undersigned sees no error in the ALJ's decision to discount the opinion of Dr. Carrier but concludes that the ALJ failed to adequately explain the weight assigned to Dr. Davis's report.

---

[10] Social Security Rulings "do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272, n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

The ALJ assigned "some weight" to Dr. Davis's opinion based on the following rationale: "he agreed that the claimant was a poor historian, he did not review any medical records, and his findings on physical examination were mostly normal." (Tr. 16). While Plaintiff may have been a poor historian, the ALJ does not explain how Dr. Davis's acknowledgement of this detracts from his opinion regarding the severity of her condition. Such recognition instead suggests that Dr. Davis factored Plaintiff's inaccuracy into his assessment. Indeed, Dr. Cheah also stated that Plaintiff "appeared to be a poor historian" (Tr. 359), yet the ALJ accorded "great weight" to his opinion. (Tr. 15). The ALJ's emphasis on Dr. Davis's lack of access to medical records is similarly inconsistent given that Dr. Cheah also failed to review any such records. (Tr. 15, 356).

Furthermore, although Dr. Davis included several "normal" findings in his evaluation, he also documented reduced grip and included manipulative limitations in his report (Tr. 345-46), which appears to be consistent with the opinions of every other physician who addressed Plaintiff's physical functionality. (Tr. 97, 111, 777). The absence of any manipulative limitations in the RFC is not inconsequential, as the vocational expert ("VE") indicated during the administrative hearing that "occasional handling and fingering" would preclude the performance of any jobs in the national economy. (Tr. 62-63). There was no testimony regarding the impact of any separate level of manipulative functioning on job viability. The ALJ's failure to explain her rejection of the manipulative restrictions thus prevents the administrative decision from enjoying the support of substantial evidence. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 804 (S.D. Ohio 2017), *report and recommendation adopted*, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017) ("[G]iven the limited analysis provided by the ALJ in affording Dr. [Davis's] opinion

'some weight,' it is not clear to the undersigned "what portion of [his] opinion was credited, and which portion was discredited.").

The undersigned is also unable to conclude that the ALJ's failure to adequately explain the weight assigned to Dr. Davis's opinion represents harmless error, particularly in light of the three-to-four hour standing and walking restriction that would prevent Plaintiff from being able to perform light work, thus limiting her to sedentary work. Plaintiff correctly notes that this relegation to sedentary work would put her at least within striking distance of a directed finding of disability pursuant to the Medical-Vocational Guidelines, otherwise known as "the Grids." *See* 20 C.F.R. § 404, Subpart P, Appendix 2.[11] Such proximity to a finding of disability narrows the possibility that remand for further consideration of the medical evidence would constitute "an idle and useless formality." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004)).

Interestingly, the ALJ also opted to pose a hypothetical question to the VE during the administrative hearing that involved a claimant who could "stand and/or walk ... four out of eight hours – but only 30 minutes at a time," to which the VE responded that such an individual would be able to find work in the national economy. (Tr. 62). These restrictions are indisputably less severe than, although curiously similar to, the three-to-four hour standing/walking restriction for 15-20 minute intervals delineated in Dr. Davis's report. Because the hypothetical was *less* favorable to Plaintiff, the VE's testimony cannot rescue the ALJ's deficient explanation from the grasp of reversible error. *Cf. Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005) (because the ALJ relied on VE testimony in response to a hypothetical "that was more

---

[11] The Grids are organized by functional levels, ranging from "sedentary" to "very heavy" work. *See* SSR 83-10.

[favorable] physically than the RFC we find supported by substantial evidence, we hold that finding an RFC different from the hypothetical given the VE was not reversible error").

This error is compounded by the ALJ's failure to adequately explain the weight given to the opinions provided by the two state agency physicians who addressed Plaintiff's physical limitations. These providers both found, among other things, that Plaintiff would be able to stand and walk for six hours per workday and would be limited to "frequent gross handling." (Tr. 96-97, 110-11). The ALJ accorded only "partial weight" to these opinions based on her conclusion that the "medical evidence supports findings of greater exertional limitations" (Tr. 17), yet failed to specify which exertional restrictions were erroneous or why she found them to be overly lax. These omissions are perplexing given that the RFC ultimately assigned by the ALJ employs the same standing and walking restrictions recommended by the state agency physicians and includes *no* manipulative limitations, the latter of which is a medical finding that is supported by no medical opinion in the record. Such inconsistency again precludes the Court from discerning whether substantial evidence supports the RFC formulation as to physical functionality. *See Weeks v. Comm'r of Soc. Sec.*, No. 1:16-cv-121, 2016 WL 6067957, at *4 (W.D. Mich. Oct. 17, 2016) (holding that an ALJ "must articulate, at some minimum level, [her] analysis of the evidence to allow the appellate court to trace the path of [her] reasoning.") (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

The ALJ may reject functional limitations that she finds incongruent with the medical evidence, but she is not permitted to vaguely and imprecisely describe the weight accorded to opinions from medical providers. *See Baskin v. Colvin*, No. 3:11-cv-0948, 2013 WL 1149597, at *17 (M.D. Tenn. Mar. 19, 2013), *report and recommendation adopted*, No. 3:11-cv-0948, 2013 WL 1405962, at *1 (M.D. Tenn. Apr. 8, 2013) (finding error where the ALJ "did not explain

which portions of their opinions [she] credited and which portions [she] discounted"). The ALJ is instead required to meaningfully explain why certain limitations are not included in the RFC determination, especially when such limitations are set forth in opinions that she weighs favorably. *O'Ryan v. Comm'r of Soc. Sec.*, No. 3:14-cv-125, 2015 WL 6889607, at *4 (S.D. Ohio July 30, 2015). The ALJ in the instant case granted favorable weight to Dr. Davis's opinion but failed to justify her rejection of the standing, walking, and manipulative limitations contained therein, an error that cannot be deemed harmless due to its potential impact on consideration of Plaintiff's condition under the Grids, as well as the absence of VE testimony that such limitations would permit work that exists in significant numbers in the national economy. Coupled with the ALJ's failure to explain the "partial weight" assignment to the state agency physicians' opinions, this error suggests that the RFC was improperly based on the ALJ's own independent medical findings, thus necessitating reversal of the administrative decision. *See Beck v. Comm'r of Soc. Sec.*, No. 1:10-cv-398, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *report and recommendation adopted*, 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011) ("While an ALJ is free to ... choose between properly submitted medical opinions, the ALJ cannot substitute [her] 'medical' opinion for that of a treating or examining doctor.").

Because the ALJ's non-disability decision is not supported by substantial evidence, the undersigned must determine whether to remand the matter for rehearing or to order an award of benefits, the latter of which is appropriate only "where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming." *Jones v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 608, 619 (S.D. Ohio 2015) (citing *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). Neither situation applies to the instant case, therefore

the Court finds that remand pursuant to sentence four of 42 U.S.C. § 405(g) for an additional hearing and further consideration is the appropriate remedy.[12]

### 3. Vocational expert testimony.

Plaintiff next asserts that the ALJ erred by failing to resolve an inconsistency between the VE's testimony during the administrative hearing and the Dictionary of Occupational Titles ("DOT"), as is required. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) (noting that the ALJ must resolve any conflict between the VE and the DOT by determining if the explanation given by the VE is reasonable and providing a basis for agreeing with the VE rather than the DOT information). Because the Court has determined that remand and rehearing is necessary for the reasons described above, this assertion of error is rendered moot.

## III. CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 15) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509

---

[12] Sentence four of 42 U.S.C. § 405(g) states the following: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

(6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:
**_J. Gregory Wehrman_**
**United States Magistrate Judge**